UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROBERTO LACHAPEL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:23-CV-0571-B |
| | § | |
| BRIO SOLAR ENERGY, LLC and | § | |
| AVOLTA POWER, INC., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Roberto LaChapel ("LaChapel")'s Amended Motion for Default Judgment (Doc. 15). For the following reasons, the Motion is **DENIED**, and LaChapel's claims against Defendants are **DISMISSED WITHOUT PREJUDICE**.

**I.**

**BACKGROUND**

This is an employment discrimination dispute. LaChapel alleges that Defendant Brio Solar Energy, LLC ("Brio") subjected him to a hostile work environment and retaliated against him for reporting unlawful conduct. *Id.* ¶¶ 20–33. LaChapel worked for Brio for six months *Id.* ¶ 12. Defendant Avolta Power, Inc. ("Avolta") has since acquired Brio. *Id.* ¶ 3. Avolta, and previously Brio, sells "customized solar energy solutions to homeowners throughout Texas and in several other states." *Id.* ¶ 11. When he worked at Brio, LaChapel, a black man of Hispanic origin, managed a team that sold Brio's solar energy products to homeowners. *Id.* ¶¶ 13, 18. LaChapel alleges that Brio discriminated against potential customers based on their race and national origin and expected its employees to do the same. *Id.* ¶ 16. Specifically, he alleges that he "received directives from multiple

levels of management instructing him and his team to not sell to Southeast Asians, including Indians and Pakistani people." *Id.* His managers said these potential customers "will sit and talk with you and ask a bunch of questions and . . . [never] purchase" anything." *Id.* ¶ 17.

LaChapel alleges that he formally complained to management about the discrimination, but Brio did nothing in response. *Id.* ¶ 18. LaChapel contends that he "was forced to quit . . . because he could no longer tolerate" the discriminatory practices and the hostile work environment that Brio promoted. *Id.*

LaChapel brought claims against Brio and Avolta for (1) hostile work environment and (2) constructive discharge and retaliation, both under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991. *Id.* ¶¶ 5, 20–33. On March 23, 2023, LaChapel filed executed summonses as to Brio and Avolta. *See* Doc. 5, Brio Aff. Serv.; Doc. 6, Avolta Aff. Serv. Neither Defendant appeared or responded within the twenty-one-day period required by the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 12(a)(1)(A)(i). On June 7, 2024, LaChapel filed an Amended Motion for Default Judgment.[1] Doc. 15, Am. Mot. Default J. The clerk of court entered default the same day. Doc. 16, Entry of Default. The Court considers the Motion below.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55 sets forth the requirements for obtaining a default judgment. A plaintiff may only obtain a default judgment after securing an entry of default by the

---

[1] LaChapel also responded to the Court's Order to show cause why Brio should not be dismissed for lack of personal jurisdiction. *See* Doc. 11, Order. LaChapel responded. Doc. 12, Pl.'s Resp. The Court finds it appropriate to exercise personal jurisdiction over Brio because the Secretary of State received process on behalf of Brio, *see* Doc. 5, Brio Aff. Serv., and the *Whitney* certificate indicates that the Secretary of State forwarded a copy of the Summons and Complaint to Brio. Doc. 12-2, Ex. B, 3.

clerk of court. The entry of default occurs when the plaintiff demonstrates by affidavit or otherwise that the defendant is in default, which means the defendant "has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules." *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996); FED. R. CIV. P. 55. However, an entry of default does not automatically entitle a plaintiff to judgment. A plaintiff must apply for judgment based on the defendant's default—this is the default judgment. *New York Life Ins. Co.*, 84 F.3d at 141.

A party is not entitled to a default judgment merely because the defendant is technically in default. "Default judgments are a drastic remedy, not favored by the Federal Rules and resorted to by courts only in extreme situations." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989) (internal footnote omitted); *Ganther v. Ingle*, 75 F.3d 207, 212 (5th Cir. 1996). "Rather, a default judgment is generally committed to the discretion of the district court." *United States v. 1998 Freightliner Vin #: 1FUYCZYB3WP886986*, 548 F. Supp. 2d 381, 384 (W.D. Tex. 2008) (citing *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977)).

Courts must carefully review the pleadings to ensure that a plaintiff is entitled to a default judgment. To that end, courts assess: "(1) whether the entry of default is procedurally warranted, (2) the substantive merits of the plaintiff's claims and whether there is a sufficient basis in the pleadings for the judgment, and (3) what form of relief, if any, a plaintiff should receive." *Griffin v. O'Brien, Wexler, & Assocs.*, 680 F. Supp. 3d 772, 780 (E.D. Tex. 2023) (citation omitted).

### III.

### ANALYSIS

Applying the three-part analysis set forth above, the Court concludes that LaChapel is not entitled to default judgment. While LaChapel has established that default judgment is procedurally

warranted, he has failed to demonstrate a sufficient basis in the pleadings to support a judgment.

A.  *An Entry of Default Judgment is Procedurally Warranted.*

The Court must first determine whether the entry of default judgment is procedurally warranted. To make this determination, the Court considers: "[1] whether material issues of fact are at issue, [2] whether there has been substantial prejudice, [3] whether the grounds for default are clearly established, [4] whether the default was caused by a good faith mistake or excusable neglect, [5] the harshness of a default judgment, and [6] whether the court would think itself obliged to set aside the default on the defendant's motion." *See Lindsey v. Prive Corp.,* 161 F.3d 886, 893 (5th Cir. 1998). Here, each factor suggests that an entry of default judgment is procedurally warranted.

First, there is no dispute of material fact because, by defaulting, Defendants "admit[] the plaintiff's well pleaded allegations of fact." *Escalante v. Lidge*, 34 F.4th 486, 492 (5th Cir. 2022) (quoting *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Second, Defendants' "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing [LaChapel's] interests." *See Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at * 3 (S.D. Tex. Oct. 5, 2011) (citing *Lindsey*, 161 F.3d at 893). Third, the grounds for default judgment are clearly established because Defendants have not filed any responsive pleadings or otherwise participated in this case. *See Lindsey*, 161 F.3d at 893 ("The clerk may enter a default judgment . . . where the defendant initially fails to appear."). Fourth, there is no evidence before the Court indicating that Defendants' silence is the result of a "good faith mistake or excusable neglect." *See id.* Fifth, a default judgment is not unfairly harsh because Defendants have failed to answer or otherwise respond since being served with LaChapel's Complaint in March 2023. *See J & J Sports Prods., Inc. v. Morelia Mexican Rest., Inc.*, 126 F. Supp. 3d 809, 814 (N.D. Tex. 2015)

(Boyle, J.) (entering default judgment against a defendant who failed to answer or otherwise respond to the plaintiff's complaint for ten months). Sixth, the Court is not aware of any facts that would give rise to "good cause" to set aside the default. *See Lindsey*, 161 F.3d. at 893. In sum, after reviewing the *Lindsey* factors, the Court concludes that LaChapel has met the procedural requirements for default judgment.

B.   *There is Not a Sufficient Basis in the Pleadings for Judgment.*

Next, although default judgment is procedurally warranted, the allegations in the Complaint are insufficient to warrant granting default judgment. *See J & J Sports*, 126 F. Supp. 3d at 814 (explaining the Court must "assess the substantive merits of the plaintiff's claims and determine whether there is a sufficient basis in the pleadings for the judgment").

Due to their default, Defendants are deemed to have admitted the well-pleaded allegations in LaChapel's Complaint. *See Escalante*, 34 F.4th at 492. However, a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *See id.* (quoting *Nishimatsu*, 515 F.2d at 1206). Thus, the Court must review the Complaint to determine whether there is a sufficient factual basis for default judgment on each of LaChapel's claims for relief. In conducting this analysis, the Court applies the pleading standards set forth in Rule 8. *See Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (citing FED. R. CIV. P. 8(a)(2)). Therefore, for a pleading to establish a sufficient basis for default judgment, it must "contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. 8(a)(2)). The pleading need only "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id.* (quotations and alterations omitted). There is a sufficient basis for the judgment if a complaint's factual allegations "'raise a right to relief above the speculative level, on the assumption

that all the allegations in the complaint are true.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Here, LaChapel brings claims against Defendants for (1) hostile work environment and (2) constructive discharge and retaliation. Doc. 1, Compl., ¶¶ 20–33. The Court addresses each in turn.

> 1. <u>LaChapel is Not Entitled to Default Judgment on His Hostile Work Environment Claim</u>.

LaChapel fails to state a cognizable claim for a hostile work environment. To bring a hostile work environment claim under Title VII, a plaintiff must allege that "he (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) (quotations omitted). If the harassment was committed by a supervisor with immediate or successively higher authority over the victim, then a plaintiff need only make a showing as to the first four elements. *See Celestine v. Petroleos de Venezuella, S.A.*, 266 F.3d 343, 353 (5th Cir. 2001), *abrogated on other grounds by National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).

LaChapel's hostile work environment claim is insufficient for two reasons. First, LaChapel does not allege that *he* "was subjected to unwelcome harassment." *Hernandez*, 670 F.3d at 651. In fact, none of the discriminatory conduct that LaChapel alleges was directed at *him*. Instead, he alleges that Defendants engaged in "egregious conduct against non-white potential customers." *Id.* ¶ 18. But to claim a hostile work environment under Title VII, he must allege, among other things, that *he* "was subjected to unwelcome harassment . . . based on race." *Hernandez*, 670 F.3d at 651. Title VII protects employees in a protected class from being "exposed to disadvantageous terms or

conditions of employment to which [employees outside of their protected class] are not exposed." *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). By "afford[ing] employees the right to work in an environment free from discriminatory intimidation, ridicule, and insult," *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986), Title VII contemplates the targeting of an employee. *Yuknis v. First Student, Inc.*, 481 F.3d 552, 554 (7th Cir. 2007) (citing *Meritor Sav. Bank*, 477 U.S. at 65). LaChapel alleges that Defendants' "practice of discriminating against Indian and Pakistani potential customers caused [him] considerable distress and anxiety, particularly because the people targeted . . . were not white and were people of color." *Id.* ¶ 22. He alleges that these practices "adversely affect[ed] his status as an employee, because of his race." *Id.* ¶ 24. But he fails to allege that any of the statements made were directed at *him*. Because he only alleges that negative comments were made about potential customers and not directed towards LaChapel, this claim fails. *See* Doc. 1, Compl., ¶¶ 16–17, 22, 28.

Second, he fails to allege that "the harassment complained of was based on race." *Hernandez*, 670 F.3d at 651. LaChapel alleges that Brio discriminated against potential customers who were Southeast Asian. Doc. 1, Compl., ¶¶ 16–17, 22, 28. But he does not allege that any of the discriminatory conduct was directed at a class that includes him. Therefore, he fails to allege a Title VII hostile work environment claim and this basis is insufficient for default judgment.

    2.    <u>LaChapel is Not Entitled to Default Judgment on His Retaliation Claim</u>.

LaChapel also fails to state a retaliation claim. Under Title VII, an employer may not retaliate against an employee for opposing an unlawful employment discrimination practice. *See* 42 U.S.C. § 2000e-3(a). To set out a prima facie case of retaliation, LaChapel must show that: "(1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3)

a causal link exists between the protected activity and the adverse employment action." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014). A plaintiff engages in a "protected activity" when he has either: (1) "'opposed any practice made an unlawful employment practice by [Title VII]'"; or (2) "'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].'" *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 428 (5th Cir. 2000) (quoting 42 U.S.C. § 2000e-3(a)) (emphasis omitted).

To allege that he opposed an unlawful practice, LaChapel says that he "raised his concerns and objections to the discriminatory practice to multiple supervisors," Doc. 1, Compl., ¶ 23, "questioned multiple supervisors about the policy and complained about it", *id.* ¶ 28, and "eventually formally complained to management" about "th[is] unlawful *business* practice." *Id.* ¶ 18. The Fifth Circuit has made it clear that "a vague complaint, without any reference to an unlawful *employment* practice under Title VII, does not constitute protected activity." *Paske v. Fitzgerald*, 785 F.3d 977, 986 (5th Cir. 2015) (quotation omitted) (emphasis added). LaChapel primarily complained of unlawful *business* practices because he reported discrimination against potential customers, rather than employees. *See* Doc. 1, Compl., ¶ 28 ("He questioned multiple supervisors about the policy [of discriminating against Pakistani and Indian people]."); *see also id.* ¶ 18 (complaining of "unlawful business practice[s]").

And to the extent that LaChapel complained of *employment* practices, his internal complaints of discrimination or harassment in general are insufficient; an employee must protest a specific form of discrimination prohibited by Title VII. *See Paske*, 785 F.3d at 986; *see also Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011). LaChapel does not allege his complaints of employment practices with sufficient specificity. In one instance, he sent an email to Defendants

stating his intention to leave the company under constructive discharge. Doc. 1, Compl., ¶ 29. Although LaChapel complained of a purportedly hostile work environment in the provided portion of the email, he did not suggest that the alleged discriminatory conduct was related to his race or national origin. *See* Doc. 1, Compl. ¶ 29. Thus, LaChapel did not engage in a protected activity before he resigned. *See* Doc. 1-1, Ex. A.

Even if LaChapel did engage in a protected activity, he does not sufficiently allege that he suffered an adverse employment action. LaChapel alleges that the adverse employment action was constructive discharge—i.e., that Defendants made working conditions so intolerable that LaChapel quit. Doc. 1, Compl., ¶ 30. To establish constructive discharge, a plaintiff must show the "working conditions were so intolerable that a reasonable employee would feel compelled to resign." *Lauderdale v. Tex. Dep't of Crim. Just., Inst'l Div.*, 512 F.3d 157, 167 (5th Cir. 2007) (quotation omitted). Various events "are relevant evidence that a reasonable employee would feel compelled to resign," including:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Lauderdale*, 512 F.3d at 167 (quotations and alterations omitted).

Because LaChapel failed to allege a hostile work environment, he does not sufficiently allege constructive discharge. Constructive discharge requires a "greater severity of pervasiveness or harassment than the minimum required to prove a hostile work environment." *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 444 (5th Cir. 2011) (quoting *Benningfield v. City of Houston*, 157 F.3d 369, 378 (5th Cir. 1998)). Thus, having found LaChapel's allegations insufficient to constitute a

hostile work environment, the Court is bound to find his claim based on constructive discharge insufficient as well. And in any event, he fails to allege any of the factors that help to show a reasonable employee would feel compelled to resign. *See Lauderdale*, 512 F.3d at 167.

LaChapel also fails to allege causation between a protected activity and an adverse employment action. *See Willis*, 749 F.3d at 317. LaChapel himself alleges that when he complained to management about the discrimination, Brio did nothing in response. Doc. 1, Compl., ¶ 18. And as discussed above, LaChapel's internal complaints were not protected activities. Therefore, the Court cannot find that LaChapel plausibly alleged that Brio retaliated against him.

C.  *Because LaChapel's Claims Fail, Damages Will Not Be Awarded.*

Because the pleadings lack a sufficient basis for default judgment, LaChapel is not entitled to the compensatory damages and attorneys' fees he seeks. Doc. 15, Am. Mot. Default J., ¶¶ 30–32.

D.  *The Court Dismisses Sua Sponte LaChapel's Claims Without Prejudice.*

LaChapel's claims are dismissed without prejudice. Although Defendants have not moved for the case to be dismissed, a court may "dismiss an action on its own motion as long as the procedure employed is fair." *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006) (internal quotations omitted). Fairness requires the court to give "notice of the court's intention to dismiss his suit or an opportunity to amend his complaint." *See Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998). While, as the Court discussed above, LaChapel fails to state a claim for the causes of action he alleges, the Court grants him leave to amend his complaint. *See id.* Should he wish to amend, he must do so on or before January 3, 2025.

## IV.

## CONCLUSION

Accordingly, LaChapel's Amended Motion for Default Judgment (Doc. 15) is **DENIED.** His claims against Defendants are **DISMISSED WITHOUT PREJUDICE**. Should LaChapel elect to file an amended complaint, he must do so **on or before January 3, 2025. Failure to do so will result in the Court dismissing the case with prejudice and issuing a final judgment**.

SO ORDERED.

SIGNED: December 12, 2024.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE